is Vivian Fu and I represent Petitioner Appellant Herculano-Dalgadillo. Before I move to the merits of the issues on appeal, I wanted to make two quick points. First, I wanted to address Respondent's argument that Crawford v. Washington applies to this case. The State raises this issue for the first time on appeal and, in fact, in District Court, argued the exact opposite, that Crawford does not apply to this case. However, I'll just make a few quick points. As Your Honors are well aware, this is a habeas case and the Supreme Court held in Bakhtin that Crawford is not retroactive on collateral review. The State points to no case where any court has held Crawford to be retroactive where it benefits the State. And, in fact, this Court has consistently applied after the Supreme Court's decision in Bakhtin. This case, this Court has consistently applied the Ohio v. Roberts framework. But, Counsel, I understand Bakhtin held that Crawford was not retroactive in Federal habeas review of State decisions. But when the last recent decision of the State Court of Appeals considered the issue, Crawford had come down. And is there any law that would say that the State habeas proceedings, the Court could not consider Crawford? Crawford had come down, but that was also before the Supreme Court's decision in Bakhtin that Crawford was not retroactive. So I think in the habeas court, in the March 21, 2005 decision, the habeas court should have applied Ohio v. Roberts and not Crawford, given the Supreme Court's decision in Bakhtin that Crawford is not retroactive. Ginsburg. Our case law under AEDPA says that the State court is supposed to apply the Supreme Court precedent at the time of that decision. So at the time of that State court decision, the Supreme Court precedent was Crawford, right? Yes, that's true. But there's also case law that the Supreme Court law that should be applied is controlling law at the time of Mr. DelGaudio's trial. And that in the ---- But under AEDPA, which is what we're looking at for purposes of this habeas review, we look, we compare the State court's decision against what was Supreme Court precedent at the time of that decision. Is there any case that would say otherwise? I do not know of one. But my ---- I guess our position is that controlling Supreme Court law at the time of his trial was O'Hara v. Roberts. On direct review, it was also O'Hara v. Roberts. But we have this Lockhart decision where the Supreme Court says that it doesn't really matter that there was a different Supreme Court precedent that was applicable or that there was different law that was applicable at the time of trial. We're really only looking at what's, whether it's constitutional under existing Supreme Court precedent. And I would submit that Lockhart v. Fretwell does not apply to this case. The Supreme Court in Williams v. Taylor specifically stated that the Lockhart does not supplant the prejudice inquiry under Strickland v. Washington. And in Justice O'Connor's words, in the vast majority of cases it would still be analyzed via Strickland v. Washington. And it's only in the minority of very unusual cases that Fretwell would come into play, and the cases that the Supreme Court used as an example was Nix v. Whiteside, which was where the defendant wanted to commit perjury on the stand and his lawyer wouldn't let him. I mean, clearly in an unusual case like that, there should be a different sort of prejudice analysis. Fretwell itself, that case was also very different. It concerned an Eighth Circuit law, which was overturned four years later. It wasn't clearly established Supreme Court law. It was an incorrect interpretation of the law by the Eighth Circuit. And the Arkansas Supreme Court in that case specifically rejected Fretwell's IAC claim because the claim was so novel that they had never encountered it before. And so their position was, well, it's not IAC because it's such a novel claim that lawyers aren't required to raise those kinds of novel claims. And here I think it's a very different sort of position. Did Mr. Delgadillo, did he rely on Crawford or Roberts in the 2005 State habeas petition? What were his arguments before the State habeas court? It wasn't in the record. He argued that the statements were improperly admitted. I believe he mentioned both Ohio v. Roberts and Crawford. Is it your position that you would have won or you should win under Roberts even if you lose under Crawford? Yes. Okay. So why? I think, first I'll address the issues of IAC of trial counsel on the certified issues. And there's no dispute that trial counsel was inadequate in failing to object to the testimony of Detective Berant and to Rosa Ramirez's coworkers. Detective Berant called Rosa five days after the May 19th events, and that was the evening that Rosa drove to the police station, called 911, and spoke to Officer Vasquez for four to six hours. So he called her at his initiative five days later while she was staying with a friend in L.A. And during this time, she told him of two additional incidents that she had never spoken to Officer Vasquez about, and those formed the basis of Count 6 and Count 7, the closet door incident and the choking on, on May 15th. So there's no applicable hearsay exception under Ohio v. Roberts, and there's no showing of any particularized guarantees of trustworthiness. So there's no way that these statements should have been admissible, and trial counsel was clearly ineffective in failing to object on Federal constitutional grounds. Similarly, with the testimony of the coworkers, these were statements that Rosa made to her coworkers at lunch break, girl talk. There's no applicable hearsay exception and no showing of any particularized guarantees of trustworthiness. And to move to the prejudice prong, Detective Berant was the only person who testified as to the closet door incident. There was no other, no one else talked about that because Officer Vasquez had not known about it. And as the district court found, the district court found that both Detective Berant's testimony and the coworkers' testimony was improperly admitted under Ohio v. Roberts. And the district court also found correctly that Simon Ponce's testimony, and he was one of the coworkers, his testimony was, provided the only evidence that could possibly support Count 7, the choking on May 15th. The district court did ultimately find that Mr. Delgadillo was not prejudiced, but the district court relied on, pointed, relied on what it termed to be substantial evidence, including medical records, photographs, and precipient observations of Rosa's injuries. But the problem with that reasoning is that there were no photographs and no medical records of any of the injuries other than the May 19th injuries where there were several photographs and where she went to the hospital. But for the incidents prior to May 19th, no photographs, no medical records, and no relevant precipient observations of her injuries. Her coworkers, a couple of them did testify that they saw her with a red neck on occasion and with a black eye. But again, without the testimony of her statements explaining how she got those injuries, there's insufficient evidence for both Count 6, the closet door incident, and Count 7, the choking on May, on May 15th. And I also, I just quickly want to address the uncertified issues. I, as your, as this Court is well aware, the standard for COA is a substantial showing of denial of a constitutional right or if reasonable jurists would find the issue debatable. With respect to the sufficiency of evidence on Count 6, I would submit that reasonable jurists have already differed. The magistrate judge recommended reversal on Count 6 and Count 7. The district court judge disagreed. So I think already Mr. D'Agostino has met the standard for Count 6. With respect to the statements to Officer Vasquez regarding events that happened prior to May 19th, the district court found that this, even if there was some sort of error, these statements would have been separately admissible under California's exception for spontaneous declarations. However, I believe that the district court erred here because California has stated that to render statements admissible under this section, there has to be a startling occurrence, which would have been the events of May 19th, but then the utterance that the spontaneous declaration has to do with the startling occurrence. So the only statements that could possibly have come under this section would have been Rose's description of what happened on May 19th and not all of the events that happened up to six months prior. So this would have been the ice pick incident and being threatened, threatening to kill and getting the black eye. So all of these, none of those should have been admitted as spontaneous statements under the California hearsay exception. And in White v. Illinois, the Supreme Court described a spontaneous statement as one that's offered in a moment of excitement without the opportunity to reflect on the consequences. And the key point here would be no opportunity for reflection. And when she's talking about things that have happened up to six months earlier, she's had a time to reflect. She's had months to think about it. So those, I don't believe, are spontaneous declarations. Do you want to reserve some time? Yes. For rebuttal? Okay. Morning. May it please the Court. Megan Beal, Deputy Attorney General, on behalf of the Warden. Your Honors, Crawford was applicable in the States as soon as it was issued by the Supreme Court, and the State court did consider Crawford and apply it on habeas in this case, in the second habeas that was brought. And it should apply here. And another way to look at this, Your Honors, is that if the case were overturned now because of a violation of Confrontation Clause or a violation of IAAC, when the case goes back for trial, Crawford will apply. And thus, because Ramirez testified at the preliminary hearing and because she was available for cross-examination at the preliminary hearing, all of her prior inconsistent statements are admissible in this time. If Crawford applies, then the statements to the first officer would come in, apart from excited utterances or anything else, I suppose, under Crawford. Crawford would not preclude them because they were testimonial and there was later the opportunity to cross-examine at the preliminary hearing. Correct. And therefore, they would not be inadmissible under Crawford at the time of trial. Right. Is that correct? Yes. Now, the next officer was?  Yes. Barrett? Barrett. Okay. Now, to him, we don't have the excited utterance, I think. I think that's sort of gone now. Correct. But the testimony or the statements would still be testimonial, I think, under Crawford. Yes. There was the opportunity to cross-examine at the preliminary hearing. Yes. And therefore, those statements would not be inadmissible because of Crawford at the time of trial. Correct. Is that correct? That's how. Now we get the statements to the co-workers. Yes. These were non-testimonial? Under Crawford, they're non-testimonial. And under Crawford and Davis, the Confrontation Clause does not apply because the Confrontation Clause applies only to testimonial statements. And therefore, they would not have been precluded under Crawford at the time of trial. Correct. But would they have to meet some other hearsay exception? The state law would apply to those. So the state hearsay law would still apply. And what the state has done in cases such as this is the trial court did – I mean, the trial counsel did error in this case. What happened is when Ramirez didn't appear at the trial, her preliminary hearing testimony was admissible. But what the state should have done was instead of putting on the co-workers in person, they should have put on the preliminary hearing testimony of the co-workers. Because Detective Barrett and the co-workers and Detective Vasquez all testified at the preliminary hearing testimony. And so under State Evidence Code 1294, the correct procedure would have been to put on the preliminary hearing of Rosa Ramirez and then the preliminary hearing testimony of the other witnesses. And why would that testimony – I mean, assuming that contained hearsay, why would that be admissible under state law? Penal Code 1294 permits it. Permits it if it's in a preliminary. State Evidence Code 1294 makes the specific thing that if you put in the prior testimony under oath of one witness, then you can put in the prior inconsistent statements of that witness. But I thought her statements to the co-workers were – Oh, I see. She testified at the hearing. She was recanting. Right. So you couldn't put in the co-worker statements to say, but she told us all along he was beating me up. Right. That's correct. So again, although there was error by the trial counsel, it was immaterial in this case because all the co-workers – in this case, all the co-workers and Detective Barrett did testify at the preliminary hearing and their preliminary hearing testimony could have come in and their preliminary hearing testimony would have, again, proved up all of the counts here, the seven counts here. So again, there was error, but it was not prejudicial. And that was the finding of the district court, of course. And so this Court could affirm the district court and find that there was – that some error occurred, but it was not prejudicial in this case. I wanted to, Your Honors, make a point, too, in terms of one of the certified issues is the sufficiency of evidence on Count 7. But sufficiency of evidence is not really the issue here because at the trial, there was sufficient evidence at the trial to support all seven counts. That's really undisputed. It's really – the sufficiency of the evidence is really an admissibility of evidence question. So it's really like whether the evidence came in properly or not. Well, right. Because if this co-worker statement should not have been admitted, then there would not have been sufficient evidence of choking on Count 7. Correct. Correct. So this Court could find either there was a violation of the Confrontation Clause or there was a violation of IAC, but couldn't find that there was no insufficient evidence by itself because it's really – at trial, there wasn't enough evidence there. The question is whether the evidence came in properly. And the people suggest that under the Confrontation Clause, the proper analysis now should be Crawford, in which case all the testimony comes in because Rosa Ramirez testified at the preliminary hearing. And so the testimonial statements to Detective Barrett come in, and the statements to the co-workers were not testimonial under the Confrontation Clause, and therefore they would come in. And so under IAC – and of course, the Federal Court would not be looking at whether there were state out – state evidentiary errors in and of themselves, but you would look at that under the IAC issue. The ineffective assistance of counsel would encompass the State court errors made by the trial counsel. So although we do admit that there was an error made by the State trial counsel, but again, it was not prejudicial because – well, under two circumstances. I mean, first of all, because he could – what the prosecutor could have and should have done was to put in just the preliminary hearing testimony of the co-workers in Detective Barrett. And again, the other way to look at it is if this Court were to find IAC and go back, it would be retried under Crawford. And so there would be no error that way either because under Crawford, because Ramirez testified at the preliminary hearing and was available for cross-examination, all her prior statements come in, both testimonial and non-testimonial. It's a very complex case. Well, it's circular. Okay. So what is your response to – and I'm not sure which uncertified issues again that the district court and the magistrate judge disagreed on how – I think it was 6 and count 7 should come out. Do you think that's sufficient so that we should review those on the merits and grant a certificate of appealability? Your Honor, I don't – no, I don't think any of the uncertified issues should be considered. And if I could just go through perhaps the evidence for count 6 and count 7, perhaps that would be helpful to the Court. Count 6 was the assault or the choking on May 7th. All right. And what we had – that was when her head was banged in the closet door. That's what she told Detective Barron. But what she told – that was when she called up Kylie Jarette and told Jarette that she could not come into work the next day. And so Jarette could testify to the audible changes in her voice that she could barely speak. She was hoarse. And the next day when she came in, Jarette saw the red hand marks on her neck. And so that, again, was a percipient testimony, which would come in at any event. It's not hearsay. So Jarette heard the changes to her voice and saw the red hand marks on her neck. And that would certainly come in because it was percipient. So the question is who committed that. It was the statements to Jarette. She told her co-worker Jarette that she was choked by Delgadillo. And then she also made spontaneous statements to 911. When she was talking to the 911 operator, she mentioned two prior chokings by Delgadillo. Plus, you have the clear evidence, of course, that Delgadillo was choking her on May 19th. So when you have red hand marks on her neck, I think it would be reasonable for the jury to infer that it was Delgadillo who placed that there, even if she did it, although we would contend that testimony could come in. The testimony on Count 7 was the May 14th, 15th assault. Again, here Ponce was the one who testified he saw red hand marks on her neck. So, again, you have percipient testimony of red hand marks on her neck, which would certainly come in at any event. This was the instance when she did go to work the next day, and she told Ponce that Delgadillo was the one who tried to choke her. And she also told Nurse Souders, when she saw Nurse Souders on the 20th, that Delgadillo had choked her about a week earlier. And, again, she made spontaneous statements to 911 that Delgadillo had choked her twice before this incident. And in this case, the magistrate judge found that the statements to 911, and, in fact, the statements to Officer Vasquez, that all the statements were Ramirez was under the influence of the entire multi-month period of being terrorized by this man, that he had threatened to kill her family, threatened to kill her, that she knew he had the ability to kill them because he was with the Mexican mafia, that he had been beating her and choking her so many times she couldn't even remember how many times he had done it, that she was in fear that night when she was at the police station that he would have her family killed or have her killed. And so the magistrate court in the R&R made a finding that all the statements to the 911 and to Officer Vasquez would qualify as spontaneous statements despite the passage of time because she was under the influence of that whole reign of terror that he had been imposing on her for many months. And I'm not sure. Did I answer the Court's question clearly enough on Counts 6 and 7? Yes. And unless the Court has any further questions, we would submit that there was no miscarriage of justice in this case, that Mr. Delgadillo received a fundamentally fair trial and that he was accurately convicted of all seven counts. We would respectfully request the Court to affirm the decision of the district court that any error that occurred was not prejudicial and to affirm the convictions. Thank you. All right. Thank you, counsel. Ms. Buh, you have some additional time for response. I just wanted to address the ineffective assistance of counsel based on State law grounds. And this is with respect to the testimony of Detective Berant and the coworkers. Under California law, under Evidence Code 1235, as has been discussed, none of these Detective Berant and the coworkers would not have been allowed to testify at trial because Rosa was not available and she didn't testify at trial. The State contends that it would have been admissible under Evidence Code 1294. 1294 only permits a transcript of the statements from the preliminary hearing to be read and not live witness testimony. And in this case, the preliminary, the actual trial testimony was much more detailed and damaging than the preliminary hearing testimony. One person testified at trial, I think it was Maha Douglas, who never even testified at the preliminary hearing. And she was the only person who said things like Mr. D'Aglio was on speed and that she had told, Rosa had told her that he had threatened to kill her. And she, so her testimony would not have been allowed under any standard. Also, no one at the preliminary hearing mentioned that Rosa's testimony, that, I'm sorry, no one at the preliminary hearing mentioned what they did at trial, that Rosa had told them that she had claimed to be in a car accident and that's how her black eye explained. So the trial testimony was much more detailed and damaging than the preliminary hearing testimony. And as Your Honors know, it's much more effective to have live witnesses testify than to just read a cold transcript. And in this case, Rosa's exculpatory statements were presented via preliminary hearing transcript, but the prosecution had the opportunity to present all their witnesses live in violation of California law. Do you agree that if, say we were to agree with you and reverse this case and send it back for a trial, that it would be tried under Crawford and so all of the same evidence would come in? Yes, but I don't think that that would be the dispositive issue. No, it's not, but I'm just asking as a practical matter. As a practical matter, if this case were retried, Crawford would apply because it's the law of the land. I just wanted to mention one thing, too. The State mentioned that the nurse had said that Ramirez had been choked, but actually she did not testify to that. She said that Ramirez told her, and this would be at ER tab 8, Ramirez told her that she had been assaulted one or two weeks earlier, but she didn't provide any other description. So there's no actual linkage. Other than the red neck, there's no, she didn't tell anyone else that she was choked by Mr. D'Oglio. With that, I would, unless Your Honors have any additional questions. Okay. Thank you very much, counsel. D'Oglio v. Woodford will be submitted, and we will take up Gaby Ayers. Thank you.    Cheers. Cheers.
judges: Thompson, Wardlaw, Ikuta